J. R. WATKINS Co. *v.* FLYNT, et al.

May 3, 1954

No. 39230  63 Adv. S. 76  72 So. 2d 195

*Henley, Jones & Woodliff,* Jackson and Hazlehurst, for appellant.

*W. U. Corley,* Collins, for appellees.

McGehee, C. J.

The J. R. Watkins Company, a Delaware corporation with its principal place of business in Winona, Minnesota, shipped to the appellee, James B. Flynt, certain goods, wares and merchandise from Memphis, Tennessee, to Collins, Mississippi, in interstate commerce and parted with the title thereto when it delivered the same to the carrier f.o.b. Memphis, the freight being paid by the said appellee.

The other appellees were sureties on the bond of the appellee James B. Flynt, the local dealer, and which bond obligated both the principal and the sureties to pay for all of the goods, wares and merchandise so shipped to the principal obligor in the bond, pursuant to the written contract entered into by the appellant and the said local dealer.

The obligation was that the principal should pay to the appellant 60% of the proceeds of his cash sales of the goods, wares and merchandise made to customers and 60% of all cash collected for previous sales when and as the payments were received. He was ultimately to pay in full the price of any goods, wares and merchandise that he sold and had not paid for. The appellant contracted and agreed that at the termination of the contract it would accept any goods, wares and merchandise then unsold provided the same were in good condition or could

be placed in good condition at the expense of the local dealer, and it was shown at the trial that the appellant also followed the practice of allowing the successor of the local dealer to take over such portion of the property as was on hand at the termination of the contract and transfer the charge from the original local dealer to his successor for the purchase price of such portion of the goods on hand as the local dealer's successor was willing to accept and pay for.

Upon the trial of the case it was stipulated by agreement of the parties that the only defense that was being interposed at the trial in the suit brought by the appellant for the sums of $1,085.67 with 6% interest per annum from and after January 30, 1945, in count One of the declaration, and $472.27 with interest at 6% per annum from and after October 16, 1947, in count Two thereof, for the goods sold and not paid for was the fact that the appellant was a foreign corporation and that it had not qualified to do business in this state within the provisions of Section 5319, Code of 1942, and that it was contended by the appellee that the said appellant foreign corporation was "doing business in Mississippi" and that having failed to qualify and appoint a resident agent for the service of process, the appellant was barred from bringing any suit in any of the courts of this state, as provided by said statute.

The trial court sustained this contention of the appellees and dismissed the suit, and the precise issue on this appeal is whether or not during the period when the indebtedness was incurred the appellant was doing business in this state within the meaning of the said statute and was therefore required to comply therewith in order to be permitted to bring this suit.

It was shown without dispute that the appellant did not have any office or place of business in Mississippi during the period in question, and that no officer of the company resided in this state at any time. It was shown,

however, by the testimony on behalf of the appellees that during a contract period with a former local dealer, a Mr. Gowdy, to whom the former local dealer referred in his testimony as a district supervisor of sales, resided at Jackson and visited the former local dealer at infrequent intervals, as a contact man, to advise with him as to how he could best promote his sales of the products which had been shipped to him f.o.b. Memphis, Tennessee, and to instruct him about putting on a "special," which he explained as being, for instance, the sale of $1 worth of vanilla extract and selling to a customer in connection therewith a box of baking powder or some other article, which usually sold at 35¢ or 40¢, at the price of 5¢. He further testified that this contact man came and investigated the solvency and suitableness of the sureties on his performance bond after procuring the witness to serve as a local dealer.

It was further shown that later a Mr. Kellum and a Mr. Atkinson successively served as contact men to locate and recommend a suitable local dealer to purchase and sell the products of the appellant in a county and that they would investigate the solvency and suitableness of the proposed sureties on the bond of the local dealer, and there is some testimony that they would make recommendations to the appellant in regard thereto, and that on one occasion one of them advised the local dealer that the sureties that he had procured met with the approval of such contact man. However, the proof did not disclose that these contact men had any final authority to approve the surety bond or to make any contract on behalf of appellant. The written contract and performance bond between the appellant and the local dealer were finally approved by the appellant at its principal place of business in a foreign state.

It was further shown that a Mr. Russell, a local distributor for the city of Jackson, had a sign at his place of business on South President Street where he stored

the goods, wares and merchandise that he purchased from the appellant in interstate commerce, and that this sign at his place of business read "J. R. Watkins Company." It was not shown that he had any authority to place this sign at his place of business or that the appellant knew anything about the sign being there. Russell was not a contact man, but was handling the products of the appellant under the same sort of contract as that under which the appellee James B. Flynt handled the same.

At any rate, these same considerations in support of the contention that the nonresident corporation was doing business in Mississippi were emphasized in the dissenting opinion of this Court in the case of Lee v. Memphis Publishing Company, 195 Miss. 264, 14 So. 2d 351, where the Commercial Appeal not only maintained an office in this state but also had contact men to locate and obtain the services of a local representative to handle the newspaper in various towns and cities. Whether that case was correctly decided or not we are of the opinion that it is controlling in the case at bar unless and until the same should be overruled. That decision was predicated primarily on the cases of Layne v. Tribune Company, 63 App. D. C. 213, 71 F. (2d) 223, decided by the Court of Appeals of the District of Columbia, and wherein certiorari was denied in 293 U. S. 572, 55 S. Ct. 83, 79 L. Ed. 670; and Item Company, Ltd. v. Shipp, et al., 140 Miss. 699, 106 So. 437. At the time of the rendition of that decision a majority of the Judges were of the opinion that the decisions cited therein fully sustained the conclusion reached. In view of that decision it is necessary that we reverse the judgment appealed from and render a judgment here in favor of the appellant for the amount sued for with 6% interest per annum as sued for, and all costs.

Reversed and judgment here for appellant.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.

HALL, J., specially concurring.

I concur in the holding that under the facts of this case the appellant was not doing business in Mississippi to the extent of barring it from recourse to the courts of this State as a party plaintiff. There are numerous authorities to support such holding. However, I think the case of Lee v. Memphis Publishing Company, 195 Miss. 264, 14 So. 2d 351, was erroneously decided upon the facts therein shown, and I do not wish my concurrence in the present decision to be construed as an approval of what was held in that case.